AO 91 (Rev. 11/11) Criminal Complaint  AUSA Mary Katherine McClelland (312) 353-0517

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

PHILLIP RICE JR.

CASE NUMBER:

1:26-CR-00039-1

**FILED**
1/27/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about March 26, 2025, at Blue Island, Illinois, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally distributing a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

RICARDO BRAMBILA
Task Force Officer
Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: January 27, 2026  4:45 pm

Judge's signature

City and state: Chicago, Illinois

BETH W. JANTZ, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, RICARDO BRAMBILA, being duly sworn, state as follows:

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") and have been since approximately January 2023. In addition, since 2016, I have been a police officer, mostly recently holding the position of Patrolman at the Hickory Hills Police Department. In my capacity as a Patrolman, I investigated numerous narcotics related offenses; some of these investigations included traffic stops resulting in the seizure of narcotics. Other investigations involved surveillance of high crime areas, which led to narcotics possession related arrests. As part of my duties as a DEA TFO, I investigate criminal violations relating to money laundering and narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

2. This affidavit is submitted in support of a criminal complaint alleging that PHILLIP RICE JR. ("RICE") has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of

establishing probable cause in support of a criminal complaint charging RICE with distribution of fentanyl, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. In summary and as set forth in more detail below, according to a DEA confidential source ("CS-1"),[1] RICE is an ounce-level fentanyl, cocaine base and heroin dealer based in the Chicago area. Between February and March 2025, DEA employed CS-1 to conduct four separate fentanyl purchases from RICE. At the fourth controlled purchase on March 26, 2025, RICE distributed approximately 56 grams of heroin and fentanyl to CS-1.

A. **February 17, 2025: CS-1 Purchases Fentanyl from RICE**

5. At the direction of law enforcement, in late January and early February 2025, CS-1 placed several unrecorded calls to RICE to coordinate CS-1's purchase of fentanyl. Subsequent to these calls, on or about February 17, 2025, beginning at

---

[1] CS-1 has been a confidential source since approximately December 2024. CS-1 has participated in four total controlled purchases of narcotics for the DEA, resulting in the seizure of narcotics and identification of narcotics dealers. CS-1 is receiving monetary compensation for his/her cooperation. Law enforcement believes CS-1 is providing accurate information, including through those details corroborated as described in this affidavit.

2

approximately 12:00 p.m., DEA conducted a narcotics buy/walk operation. In advance of this operation, CS-1 called RICE on an unrecorded line and RICE instructed CS-1 to come to his residence located on the 2200 block of Market Street in Blue Island (the "Rice Residence")[2] to purchase five grams of fentanyl. Law enforcement equipped CS-1 with covert audio/video equipment prior to the narcotics transaction. Surveillance officers then observed CS-1 meet with RICE [3] outside of the Rice Residence, where CS-1 provided RICE with approximately $225 in exchange for five grams of fentanyl. At the conclusion of the narcotics transaction, law enforcement took possession of the narcotics, which field tested positive for the presumptive presence of fentanyl. The narcotics were subsequently submitted to the North Central Laboratory in Chicago, which confirmed the presence of fentanyl.

### B. February 27, 2025: CS-1 Purchases Fentanyl from RICE

6. On or about February 27, 2025, beginning at approximately 1:00 p.m., DEA conducted a second narcotics buy/walk operation from RICE. In advance of this operation, CS-1 called RICE on an unrecorded line and RICE instructed CS-1 to meet at a fast-food restaurant located on the 12700 block of South Western Avenue in Blue Island. Law enforcement equipped CS-1 with a covert audio/video device. Surveilling agents observed RICE arrive at the fast-food restaurant in a black 2002 Toyota

---

[2] Per Illinois driver's license information, the Rice Residence is Rice's registered addressed, as well as the Toyota's registered address.

[3] Officers positively identified RICE via comparison to a photograph obtained from the Illinois Secretary of State database.

3

Tundra bearing Illinois license plate 3954338B ("the Toyota").[4] Agents then observed RICE park the Toyota at a nearby market, exit the Toyota and walk across the street to the parking lot of the fast-food restaurant, where RICE handed CS-1 approximately ten grams of suspected fentanyl in exchange for approximately $450. The suspected fentanyl was an off-white color with a hard, chalk-like texture, wrapped in a clear-knotted plastic bag, similar to the narcotics previously purchased from RICE and consistent, in my training and experience, with the appearance of fentanyl.

### C. March 6, 2025: RICE Delivers Narcotics to CS-1

7. On or about March 6, 2025, DEA conducted a third narcotics buy/walk operation involving RICE. While establishing surveillance near the Rice Residence the morning before the controlled purchase, agents observed the Toyota exiting a motel located on the 12800 block of South Ashland Ave in Calumet Park. Agents then observed RICE as the sole occupant, drive to a sports bar located on the 15700 block of Crawford Ave in Markham. After several minutes, agents observed RICE depart in the Toyota and arrive at the Rice Residence, parking on the street. Agents subsequently observed RICE leave the Rice Residence and drive the Toyota to an apartment building located on the 12000 block of Irving Avenue in Blue Island. Agents observed RICE walk up the exterior stairs to the second level of the apartment building and use keys to unlock the door and enter the apartment marked unit 11.

---

[4] According to Illinois Secretary of State information, the 2002 Toyota Tundra is registered to Rice, with a registered address of the Rice Residence.

4

Approximately nine minutes later, agents observed RICE exit the apartment and drive the Toyota to the parking lot of a hotel located at the 500 block of East End Avenue in Calumet City. Agents observed an unknown female approach the driver's side window of the Toyota where an exchange of unknown small items occurred between RICE and the unknown female just before the Toyota departed the area. Based on my training and experience, the exchange was consistent with a hand-to-hand narcotics transaction.

8. At approximately 11:00 a.m., CS-1 conducted an unrecorded call with RICE and ordered one ounce of fentanyl. Law enforcement equipped CS-1 with a covert audio/video recording device. Agents surveilling RICE observed RICE drive the Toyota back to the Irving Avenue apartment, which he then entered. Approximately five minutes later, agents observed RICE exit the apartment and drive the Toyota to a local fast-food restaurant where CS-1 was waiting. CS-1 walked up to the Toyota and RICE handed CS-1 approximately one ounce of suspected fentanyl in exchange for approximately $1,100. As with the suspected narcotics provided by RICE on February 27, 2025, the suspected fentanyl was an off-white color with a hard, chalk-like texture, and wrapped in two clear knotted plastic bags.

**D. March 26, 2025: RICE delivers fentanyl to CS-1**

9. On or about March 26, 2025, DEA conducted a fourth narcotics buy/walk operation involving RICE. CS-1 conducted an unrecorded call with RICE at the direction of law enforcement to purchase an additional two ounces of fentanyl. Law

enforcement equipped CS-1 with a covert audio/video recording device.[5] CS-1 then traveled to the agreed upon meeting location accompanied by an undercover law enforcement officer ("UC").

10. At approximately 2:57 p.m. that day, agents conducting physical surveillance observed RICE arrive at the Rice Residence, walk toward the side door of the detached garage and out of view, returning seconds later from the same area while holding an unknown item. RICE then departed the area in the Toyota and drove to a fast-food restaurant located in the 12700 block of South Western Avenue. A few moments later, CS-1 arrived with the UC and parked. According to the UC, CS-1 then met with RICE through the front passenger-side window of the Toyota. According to CS-1, CS-1 then handed RICE approximately $2,000 in exchange for approximately two ounces of suspected fentanyl. According to the UC, once CS-1 returned to the undercover vehicle CS-1' tendered the purchased suspected narcotics to the UC.

11. Agents submitted these purchased narcotics for laboratory testing at the DEA's North Central Laboratory. Based on my review of the lab report, the narcotics purchased from RICE on March 26, 2025, weighed approximately 56 grams and contained heroin and fentanyl.

12. Based on the foregoing facts, there is probable cause to believe that on or about March 26, 2025, PHILLIP RICE JR. knowingly and intentionally distributed a controlled substance, namely, 40 grams or more of a mixture and substance

---

[5] The device did not record due to a malfunction. Agents subsequently obtained surveillance video from a nearby fast food restaurant

containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

_____
RICARDO BRAMBILA
Task Force Officer, Drug Enforcement Administration

SWORN TO AND AFFIRMED before me this 27th day of January, 2026.   4:45 pm

_____
Honorable BETH W. JANTZ
United States Magistrate Judge